Good morning. May I please record my name is Melinda Cantrell and I represent Appellant Defendant Sgt. Angela Walton of the Los Angeles County Sheriff's Department. I'd like to reserve three minutes for rebuttal. I'm here today on behalf of Sgt. Walton to ask that the judgment entered in favor of plaintiffs be reversed and that judgment be entered in favor of Sgt. Walton. We're reviewing partial summary judgment denying qualified immunity. That's what we're here about, isn't it? And it was actually a pre-trial motion for judgment that three days before trial the court's response was treated as a summary judgment motion which denied qualified immunity in addition to the appeal from the judgment. And then those orders coincide with each other in addition to the post-judgment order granting over $250,000 in attorney's fees to plaintiffs before defendant's opposition to the fee motion was even due. The issues that I'm going to concentrate on this morning concern the fact that judgment was entered against Sgt. Walton without the proper standard being applied to determine whether the probable whether the search warrant was supported by probable cause by giving deference to the initial magistrate's approval of the search warrant application. Who applied the wrong standard? Your Honor, in the court below at the summary judgment phase we submitted that the standard is giving deference to the magistrate making the probable cause determination. In the order on the summary judgment motion, Judge Liu indicated that he believed there was a trialable issue of fact as to whether the warrant supported probable cause and that this matter should go to the jury. Yeah, but that was in response to the motion of the defendant for summary judgment. So all that the judge needed to do was to say, well, there's enough here. There may be a fact issue. And that's all. It's not a definitive determination that it necessarily is a jury issue. However, that's the way I see it. Thank you. Your Honor, on appeal, the duty of the Ninth Circuit is to review the initial magistrate's determination that probable cause was supported by the search warrant by giving deference to the initial magistrate's determination and reviewing that determination for clear error. And, of course, the second issue is the Leon good faith issue. All right. What is there in this warrant that supports the conclusion, if you want to call it that, that in 34 Paseo de Castana in the city of Rancho Palo Verde, there will be the proceeds of this illegal operation? Your Honor, I believe that many things on the warrant support that finding. Question asked for a list. Sure. The first is that Sergeant Walton indicated that she had experience and knowledge with regard to how these. This is true. And she never proffered her opinion that owners of places like this stash the money in the house. That's not there. Actually, I would disagree with that. What does it say? In my opinion, as an experienced person, owners of a massage parlor established like this that are fronts for prostitution, keep the money in their house. Well, at E.R. 496, what she says is that it is commonplace for the managers of the businesses to forward the monies to the owners. Well, OK. The manager of the location forwards all monies charged for massage services to the owners of the location. And where does it say and the owners keep it in the house? Well, Your Honor, I believe a reasonable inference of which a magistrate may make in making the probable cause determination is that the money is no longer at the business but is forwarded to the residence. So, and the standard there is probable cause, not definitive proof, but probable cause that it's in the residence? No. Actually, the standard for a magistrate to determine that a search warrant is supported by probable cause is only that there is a substantial basis to believe that there is a fair probability that the evidence will be found in the location or residence searched. That's a long way of saying probable cause. No, Your Honor. Well, a substantial basis does not rise to the level of certainty or more probable than not. So you're saying that you don't have to have probable cause to show that the item being searched for is in the house? Yes, Your Honor. I think I misunderstood your question. It doesn't have to be more likely than not. Of course not. It's probable cause. Determining probable cause, the test to see if a warrant should be issued, is a substantial basis, which does not rise to the level of more likely than not. It is less than that. Did your client go to the district attorney's office to get this warrant approved before submitting it to a magistrate? There's no evidence of that in the record, Your Honor. And if I may continue, the duty of the Reverend Court here is to simply ensure that the magistrate had a substantial basis to make a reasonable determination using practical, common-sense approach that there was a fair probability that the items would be found in the residence. But in terms of what's in the application for the warrant and the affidavit, there's only one sentence, and that's the one I read. The manager forwards to the owner. I would disagree with that, Your Honor. I think the warrant sets forth the nature of this crime, which is having a purported legitimate business serve as an illicit house of prostitution. Because of the nature of that crime and the fact that the owner, Sun Hai Lee, who is also at the residence being searched, would keep fruits and tools of the illicit prostitution ring at her home rather than at the business in order to keep up the guise of the purported legitimate business. Usually warrants like this have the expert witness saying that as an opinion based on past experience. You're leaving it to an inference, then. Well, it is also indicated in the warrant that Sun Hai Lee was already suspicious of undercover officers, further lending credence to the fact that she would likely not want to keep tools of the illegalness of the business, such as condoms, lubricants, pornographic materials, financial documents, in the business. Rather, those items, because of the nature of the crime, would likely be kept at the home, particularly where it was also... So the owner, the bad guy, is afraid of the police. And that is... So he's not going to keep the stuff at the business. He's going to put it in his house. Well, it's also indicated that it was suspected that the business kept illegal immigrants, further showing why they would not want to keep these items where undercover cops frequented at the place of the business. They are aware that decoys and undercover officers frequently went to the business. They had signals, as set forth in the warrant, to try to tip each other off. Everything you've described so far would lead to the perfectly logical conclusion that proceeds of an enterprise like this would be kept off-site. Yes, sir. That doesn't get me to the home. What gets me to the home? Well, Sun Hai Lee ran Oriental Acupressure, and she resided at the residence. The money is kept with the owners. Where else would be the reasonable inference if someone, as you indicated, would not want to keep these items in their business, but it would be that these items would be kept in the home? I guess I'm starting from essentially the same point as my colleague, and that is it would be one thing if this warrant stated the opinion of this officer, based on X number of years of investigative experience, that owners of these types of enterprises keep the proceeds off-site, and frequently off-site is their own home. But that's missing here. Yes, Your Honor, although I believe that can be inferred. Let me ask you another possible inference. You've got Oriental Acupuncture, which is really coming in part of the business of J.H.J. Educational College, isn't it? No, Judge Breyer. Is that related? No, Judge Breyer. J.H. College is a college that issues certificates to individuals wanting to get into the acupressure and massage. Yes, but weren't they feeding prostitution? So isn't there just as much of an inference that the money might go to J.H.J. as well, equally, and maybe more so than the home, having in mind that a home is a man's or a woman's castle? No, Your Honor, I would respectfully disagree with that, because the owner and operator of Oriental Acupressure, Sun Hai Lee, was not at the J.H.J. College and did not have business there. She just was referred business from the CEO of J.H.J. College. But there was a relationship between the two businesses? Only to the extent that the school... Well, wasn't J.H.J. being searched? Yes. And I wanted to ask you another thing. There were some automobiles being searched. Yes. Was anything of an incriminating nature found in any of the automobiles? I would have to check on that, Your Honor. You don't know? Okay. At the stage the proceeding is now, if we were to affirm the district court, you would be free in subsequent proceedings, if you could, to establish by way of evidence what you're inferring was in the affidavits in the search warrant present, correct? We submit that we should be able to. However, the trial court precluded that and entered and said there's no additional evidence that can be introduced to explain the search warrant. And the search warrant doesn't set forth probable cause, and therefore the judge actually entered a finding of liability in favor of the plaintiffs. So we would ask that that would be reversed. However, I think... reversed and remanded for additional evidence. However, I think this reviewing court should simply reverse the judgment and enter judgment in favor of Sergeant Walton because there is... the magistrate did not clearly err in finding that the warrant set forth probable cause. And furthermore, and perhaps even just as or more importantly, there's been no determination made by applying the proffer test that Sergeant Walton should have been entitled to qualified immunity. Even if Your Honor is indicating that it is not clear, although we submit that it is... Well, he denied qualified immunity, right? They denied... That's in large part why we're here, isn't it? Well, Your Honor, Judge Lew indicated there was a triable issue of fact. Subsequently, after the case was transferred, Judge Otero indicated no more evidence could be offered, and then Judge Otero interpreted Judge Lew's rulings as being true. That was to indicate that qualified immunity was denied. Because of the unusual procedural posture of this case, the proper qualified immunity analysis has never been determined. The test is, and I submit that Your Honors should find, that the search warrant application was supported by an addition of probable cause. Therefore, Sergeant Walton is entitled to judgment in this case. Under Malley v. Briggs, it is only where the warrant application is so lacking in an addition of probable cause so as to render official belief in its existence unreasonable. That's Malley or Leon? That is Malley v. Briggs applying the Leon good faith exception standard in 1983 qualified immunity, in a qualified immunity case under 1983. So Malley v. Briggs... I have one more. I'm sorry? ...qualified immunity. It's true that you can't have evidence beyond the four corners of the search warrant, but do you have any cases saying that if there's other evidence that the policeman knew about and didn't present to the magistrate, he ought to be able to show it on the issue of whether or not the police officer acted properly by showing he had other evidence in his mind? You got any cases like that? Your Honor, that is a matter that there's not a lot of cases of there. Elliott v. Lader is a district court case that indicates that. And also... Is that cited in your brief? Yes, sir. Elliott v... Elliott v. Lader, L-A-T-O-R. Okay. And also, I believe the Supreme Court case Groh, the dissent discusses, and we have pursued that argument, why that should be allowed. What's the Supreme Court case? It's Groh v.... Groh? G-R-O-H. All right, I've got it. That's enough. Elliott is an Eastern District of Michigan case? Correct, Your Honor. And I cannot find any other case law which indicates that an officer should not be allowed to present additional evidence to establish qualified immunity in this 1983 case. And I would submit that that is proper. In Malley v. Briggs, the Supreme Court determined that qualified rather than absolute immunity should apply to an officer applying for the warrant. And the purpose of this was to deter officers from prematurely applying for a warrant where probable cause had not yet manifested. Conversely... You've used your time up. You want to finish what you're, finish your sentence. Conversely, in a case where the officer is armed with probable cause at the time he applies for the warrant, those facts exist, regardless of whether he inadvertently fails to include all those facts in the warrant, and therefore he should be entitled to qualified immunity as negligence is not enough for a 1983 action. But even regardless of that, I believe the warrant clearly in a case without additional evidence supports an addition of probable cause. Okay. Thank you. You've exhausted your time. We'll hear from the other side at this moment. Good morning, Your Honor. Donald Morris for the plaintiffs in this case. Good morning. The appellees. If I might respond briefly to some of the arguments that opposing counsel made, and I will be brief. What counsel has called inferences from matters stated in Detective Walton's affidavit I think should be more clearly characterized as speculation. There's simply nothing in the affidavit whatsoever that talks about what might be at the house, the likelihood of contraband or evidence being at the house. Is it fair speculation? Speculation is speculation. Is it fair speculation? I wouldn't even conceive that it's fair speculation. But it's speculation, Your Honor, and more than speculation is required, I believe. Well, you get into that gray area, what's speculation and what's inference, because probable cause in most circumstances is a question of inference. You jump from one set of facts to a conclusion by inferring. I agree with that, Your Honor, but you have to have facts upon which to base an inference. And there are no facts. And probable cause, of course, doesn't have to be dispositive at all. It doesn't have to be conclusive or even clear. So why isn't it a fair inference to say that under these circumstances and in a legal context, the owner to whom the owner is involved actually in what's going on in this case, as you know from the affidavit and from the case itself, why isn't it a fair inference that the money that's forwarded to the owner may be kept in the owner's house? Because, as I think the district judge reasoned in this case, there's nothing that suggests that the owner is carrying anything from the business to the home. They could have watched the purported owner and that activity. My mind in this case goes directly to the Leon case. And I'm having a hard time figuring out why the Leon case doesn't cover this situation. Because you don't have any evidence at all that the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. There's none of that in this case, right? No false stuff in this affidavit as far as you know. We're not appealing that issue. Well, is there any? Well, what there was, Your Honor, was the affidavit mischaracterized reports that were attached. Okay, but you're not bringing to any false information. By the way, that suggests that you can look outside of the affidavit for information. How else would you prove it's false or there was reckless disregard of the truth? But there's none of that. Right. And do we have anything that suggests that the magistrate wholly abandoned his judicial role? Oh, I think we do. For example, there's no mention whatsoever of one of the locations. No mention whatsoever in the affidavit of one of the locations that the magistrate authorized a search for, as well as no mention of vehicles that were specified to be searched in the warrant. So the magistrate in this case who issued the warrant or authorized the warrant did authorize search of locations, unlike the residents here that just weren't mentioned at all in the affidavit. Well, which locations, which premises are you talking about? Location number one on Beverly Boulevard? Just a minute. That's J.H.J. Educational College. J.H.J. That's certainly talked about, isn't it? That's correct. Location number two is 415 South Lafayette Park. You say there's no reference to that? One of the locations. Just a moment. All right. If I may. Number three, Manchester Boulevard is clearly referenced. I think it might have been. Number four, Paseo de Castanas is clearly referenced, 638 South Van Ness. Which one of these is not mentioned? Van Ness, Your Honor. Van Ness? Yes. That's the only one? Yes. And what is that address? What is it? 638 South Van Ness? Correct. What is it, a home, a business? I believe it's a business. I'm not sure, Your Honor. I don't know. I'll have to say I don't know. Is the search of that location at issue here? Well, no, because the plaintiffs. You're deciding it as an example of the magistrate having authorized the search of a place, in your view, not mentioned in the affidavit. Correct. Well, the fact of the matter is it was the officer. He really has to come back to being that the officer knew or that any reasonable officer would know that he had no right to search a home when the only evidence he had of illegal activity was at other places. Isn't that the basis? That's the qualifying immunity standard, Your Honor, and a probable cause standard. But I want to ask you about qualifying immunity. If the officer knew and had knowledge that in prostitution rings, which he had investigated, the people running the ring had kept the monies in the house. He knew that from past experience. That would make a difference, wouldn't it, if it were in the affidavit? I think that's precisely our point, that if that's true, and in this case we don't know that that's true. Well, assume it's true. That would have made probable cause in the affidavit, wouldn't it? Probably, Your Honor. And would have given him immunity. Yes. All right. Now, why, from an immunity standpoint, if he actually knew that but didn't put it in the affidavit for some reason, why shouldn't he have a chance to show that on remand? Okay, because the Ninth Circuit has very consistently said you can't do that. And Judge Trott asked me earlier, isn't it the case in a Franks-type situation where there's an allegation of misleading affidavit? Sure. Everything out of the sun comes in. Right. But that's when the party challenging the officer puts in to issue the good faith of the officer and the honesty of the officer. That is the very narrow area. Isn't that exactly what Leon is talking about? I don't believe so, Your Honor. One of the tests is whether an officer in good faith could rely or believe on this or whether it's false or misleading information. It seems to have parallel. But it's an objective standard. And we start in our brief at page 39 and go on for several pages citing Ninth Circuit case after Ninth Circuit case. Yeah, but those were all cases not involving immunity, as I remember. They were all cases on probable cause. There are cases involving good faith, too, Your Honor. And under Malley, it's the exact same standard. So I think what's being suggested here is somehow there's a difference between the good faith standard in these Ninth Circuit cases and the qualified immunity standard in a 1983 case. How do you deal with the indicia of good faith and unreasonableness and all the rest in Leon if you don't go outside the record? You only do if there's a Franks challenge, Your Honor. That's the point. That's what all these cases say. But in Leon, you would want to show that this officer lied, this officer was reckless, this officer had other information that he or she didn't put forward to show that there was no reasonable – there was no way the officer could reasonably believe that this warrant contained probable cause. You'd have to go outside the record. You would want to, wouldn't you? If you made a Franks challenge. Make a Leon challenge or the prosecution says Leon and you would challenge Leon. But there's different prongs under Leon. One is a Franks-type challenge, which you're talking about, and – They're not mutually exclusive. No, they're not exclusive, but you have to deal with what's an issue. And when it's not a Franks challenge, Your Honor, the cases are quite clear that it's an objective standard. And the reason for that is because they want everything in the affidavit. So the magistrate, who should not likely issue a warrant, will consider all the relevant facts. If you let everything in after the fact, you've deprived the magistrate issuing the warrant of that opportunity. I'm trying to move you off that for just a second, but it's in the same ballpark. Ordinarily, in qualified immunity summary judgment appeals, it's clear it's the noble standard that applies because we're dealing with questions of law. If it's purely a question of fact, we don't have jurisdiction. That's correct. What precisely are we looking at in this case? We have an officer who presented information to a magistrate and a search warrant resulted. Are we looking, to some extent, on what the magistrate did? Well, I think what you're looking at is whether the magistrate had a substantial basis to conclude that there was a fair probability that there would be contraband or evidence that there wasn't. And what's the standard of review for this panel on that? Well, that's the standard. No, no. Isn't it clear? No. When we look at what a magistrate does, a magistrate's determination of probable cause, isn't the standard of review clear error? I think the standard is whether it's clear that there was not a substantial basis to say that there was a fair likelihood. I think that's the standard. I didn't notice whether either of you cited old person versus Brown. It doesn't sound familiar to me. Here's what it says. In this context, the clear error standard requires that if the magistrate's conclusion as to probable cause, and now a quote from the opinion, is plausible in light of the record viewed its entirety, the court of appeals may not reverse it even though convinced that had it been sitting in the magistrate's shoes, it would have weighed the evidence differently. I understand that. Okay. I'm not disputing that. And how does that apply to this? The question still is whether there was evidence to weigh, and there wasn't evidence to weigh regarding the residence other than this vehicle being located there. I wanted to go back to the question Judge Trock posed earlier, which is, why isn't it reasonable to think that a business owner might put proceeds of, I guess, money, for lack of a better word, at the residence? Well, no more so than any other business owner. I mean, let's say we had a mortgage business and there's some sort of fraud going on there. I think there has to be something in the affidavit that gives an objective basis to conclude that something's at a residence of the owner of the mortgage business. An officer in a case like this goes to a magistrate and files an affidavit, and this is a hypothetical, obviously, that says, my experience is that these people do not keep the proceeds of their activities at the place where the illegal enterprise is going on. They put it in other places. That's all the affidavit says. And then in the next paragraph it says, I've determined from public records that the owner of this business has a home, here's the address, has a storage locker, here's the address, has an office, here's the address, and has a good friend who lives at this address, and I want a warrant to search each of those places. Same problem? That's a closer question, obviously. I don't think this is that close a case because we don't have anything in the affidavit suggesting that. In fact, a lot of the items that the opposing counsel was suggesting might not be at the location or items they sought that are used at the location, allegedly, condoms, you know, this sort of thing, you know. So you want me to take a stab at your hypothetical? No. You know, I don't think that's this case, you know. Okay. Anything else? Well, I just wanted to hammer one more time on this point because it seems to be perhaps. What we seem to be down to, your contention is, that it would have been improper for the magistrate to infer from the officer's statement about off-site storage that one of those places where these proceeds might be found or evidence of it would be her home. Well, there's no statement in the affidavit about off-site storage. So it seems to me. Well, forwarded to the owner means it's off-site. No, no, no. In fact, quite the contrary. In the affidavit, what Detective Baum talks about is money being handed on the premises to Son Healy. So then he puts it in his desk in the premises. Well, you know, there's nothing about that. Presumably it could go to a bank account. Who knows where it goes? But, you know, I think it's speculation at that point. And all the cases other than this line of drug cases where you have experienced officers typically saying, you know, we've done all these drug investigations, and drug dealers tend to keep their stuff at their homes because, you know, by definition they're not legitimate businesses, unlike, say, a massage business, which, you know, could well be legitimate. The cases that we've cited, I think, tend to say no. You can't just assume it's going to be at a residence absent something like that, some experience with that sort of situation. Well, what did the affidavit did say, or did it not, that people in this business give the money to the owners, something like that? Right. That's what I was saying. That's what the only thing it said. Yeah, it said, but it said more than that. It said the money was handed at the massage location, at the acupressure site, on one occasion to the Sun Hee Lee. So it suggested the money was actually, you know, in the possession of Sun Hee Lee at the site. And that's as far as the affidavit went. All right. Okay. I don't have my times up, but if you want me to get something. We've taken you, actually taken you over your time with our questions. Thank you very much for coming in today and for your arguments. Thank both sides. Just argue. Do you have one more? One brief question. Where is South Van Ness in the Statement of Probable Cause? I'm sorry, I didn't hear you. Where is South Van Ness in the Statement of Probable Cause? That location, that is not being challenged with regard to any financial interest. Where is it in the Statement of Probable Cause? If I recall correctly, Your Honor, I believe in the first place with regard to location number one in J.H.J. College, there's a reference to Star. J.H.J. Star Health Center. And the Van Ness is Star Health Center. If I recall correctly, that's the relation. But, again, that location isn't being challenged. And I would respectfully submit that this clearly isn't a rubber stamp. You just had a question. The question was, where is it? And you've told Judge Trott where it is, right? Oh. Okay. Star Health Center. That's it. All right. Thank you. Case just argued will be submitted for decision, and the Court will stand in recess for the day.
judges: Fletcher, Gould